UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JOSE MENDOZA-ZARRATE,<br><br>    Defendant. | Criminal Case 25-30037-MGM |

MEMORANDUM AND ORDER DENYING THE GOVERNMENT'S
MOTION FOR PRETRIAL DETENTION
(Dkt. No. 5)

I.      Relevant Background

Defendant Jose Mendoza-Zarrate ("Defendant") has been indicted on one count of unlawful entry of a deported alien in violation of 8 U.S.C. § 1326(a) (Dkt. No. 12). The government alleges that Defendant is a Mexican national without legal status in the United States ("U.S."). An affidavit in support of a previously issued complaint alleges that, in December 2005, agents with Immigration and Customs Enforcement ("ICE") encountered Defendant in a New York state jail. Defendant admitted he was a Mexican citizen who had entered the U.S. without authorization to do so. In 2006, ICE took custody of Defendant and held him pending a hearing before an immigration judge, who ordered him removed to Mexico. Before Defendant was removed, his photograph and fingerprints were taken (Dkt. No. 3-1 at 3, ¶¶ 4-5). On June 19, 2006, ICE agents encountered Defendant at a local police department in New York state after his arrest on local charges. He admitted that he was a Mexican citizen who had entered the U.S.

1

without authorization. ICE agents matched his fingerprints to those taken when he was removed from the U.S. earlier in 2006. ICE took him into custody and, on or around July 3, 2006, removed him to Mexico. His fingerprints were taken again at the time of this second removal (Dkt. No. 3-1 at 3, ¶ 6). On or around February 26, 2007, the United States Border Patrol ("USBP") encountered Defendant in Arizona. Defendant admitted he had entered the US from Mexico without authorization. His fingerprints were checked against those on file. On or around May 30, 2007, after an appearance before an immigration judge, Defendant was removed to Mexico. His fingerprints were recorded at the time of this third removal (Dkt. No. 3-1 at 3-4, ¶¶ 7-8). On August 16, 2007, ICE agents encountered Defendant in a New York state jail after his arrest on local charges. Defendant admitted he was a Mexican national in the U.S. without authorization. ICE matched his fingerprints to those in his A-file. ICE took Defendant into custody and removed him from the U.S. on August 30, 2007 (Dkt. No. 3-1 at 4, ¶¶ 9-10).

On May 20, 2025, Customs and Border Protection (CBP) officers and ICE agents encountered Defendant as a passenger in truck while they were in the process of apprehending a target individual in West Springfield. Defendant provided a Mexican identification document and admitted he was a Mexican national who was in the U.S. without authorization. CBP arrested Defendant based on his admission concerning his status and verification that his fingerprints matched those in his A-file (Dkt. No. 3-1 at 4-5, ¶ 11).

The government initially charged Defendant by complaint with illegal re-entry after deportation (Dkt. No. 3). The government moved for pretrial detention pursuant to the Bail Reform Act of 1984 ("BRA"), 18 U.S.C. § 3142(f)(2)(A), on the ground that there is a serious risk that Defendant will flee (Dkt. No. 5). The government further contends that, if the court finds that Defendant poses a serious risk of flight, the court should further find that there are no

2

conditions of pretrial release that will reasonably assure the appearance of Defendant as required. *See* 18 U.S.C. §3142(g). Defendant opposes the Government's request for pretrial detention. The court held a hearing on the government's pretrial detention motion on June 23, 2025, and, and, at the conclusion of the hearing, took the government's motion under advisement (Dkt. No 10). Having carefully considered the parties' arguments, the court denies the government's motion for pretrial detention for the reasons set forth below.

II.   Legal Standard

The BRA "provides … a two-step process through which the government may seek pretrial detention. *See* 18 U.S.C. § 3142(f)-(g)." *United States v. Ibarra*, No. 2:24-mj-00385-KFW-1, 2025 WL 27474, at *2 (D. Me. Jan. 3, 2025). "First, the government must prove that the case is eligible for pretrial detention because it concerns one of five categories of serious crimes, a serious risk that the defendant will flee, or a serious risk that the defendant will obstruct justice." *Id.* (citing 18 U.S.C. § 3142(f)). Second, if the government proves a serious risk of flight, "it must then prove that there is 'no condition or combination of conditions' that 'will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community ….'" *Id.* (quoting 18 U.S.C. § 3142(e)); *see also United States v. Mejias-Mejias*, 771 F. Supp. 3d 688, 690 (D. Md. 2025) (same; collecting cases). "Congress chose not to exclude removable aliens from consideration for release or detention in criminal proceedings." *United States v. Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) (citing 18 U.S.C. § 3142(a)(3), (d)). Instead, the BRA "directs courts to consider a number of factors and make pre-trial detention decisions as to removable aliens 'on a case-by-case basis.'" *United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017) (quoting *United States v. Barrera-Omana*,

3

638 F. Supp. 2d 1108, 1111 (D. Minn. 2009)); *see also Santos-Flores*, 794 F.3d at 1091; *Ibarra*, 2025 WL 27474, at *2.

Here, as in the *Ibarra* case, the government bases its motion for pretrial detention on its assertion that Defendant poses a serious risk of flight, *see* 18 U.S.C. § 3142(f)(2)(A), an assertion that the government must prove by a preponderance of the evidence. *See Ibarra*, 2025 WL 846435, at *2 (citing *United States v. Reynolds*, 609 F. Supp. 2d 108, 110 (D. Me. 2009)). The BRA does not offer guidance as to how a court should determine whether a defendant poses a "serious" risk of flight. Noting that "the adjective does not appear in other parts of the Bail Reform Act," *Mejias-Mejias*, 771 F. Supp. 3d at 691, courts have concluded that "Section 3142(f)(2)(A) requires more of the government than Section 3142(g)'s 'risk of nonappearance' showing that is more often addressed in detention hearings." *Id.; see also United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1138 (D. Idaho 2023) (reasoning that the government must show that there is a "great risk – beyond average – that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision"). Factors courts have identified for the purpose of this inquiry include, in a non-exhaustive list, incentive to flee, ability to flee, prior noncompliance with court orders, including prior failures to appear, ties to the jurisdiction, uses of aliases, potential punishment, length of residence, employment history, and substance abuse. *Mejias-Mejias*, 771 F. Supp. 3d at 692-94; *Figueroa-Alvarez*, 681 F. Supp. at 1142-45.

A majority of the courts that have considered the issue have held that "the fact that ICE may involuntarily remove a defendant does not establish their eligibility for pretrial detention as a serious risk under section 3142(f)(2)(A)." *Ibarra*, 2025 WL 27474, at *3 (citing *Ailon-Ailon*, 875 at 1337); *see also, e.g., United States v. Lopez*, No. 23-CR-10269-AK, 2023 WL 8039318, at

\*2 (D. Mass. Nov. 20, 2023) ("I am persuaded that the BRA does not authorize detention based on a risk that Defendant will not appear for reasons beyond his control."). "Nevertheless, considering a defendant's immigration status – including the prospect of ICE detention and removal – and how that status may affect their risk of flight and nonappearance is consistent with the individualized assessment required by the Bail Reform Act." *Ibarra*, 2025 WL 27474, at \*3; *see also Lopez*, 2023 WL 8039318, at \*4 n.3 ("The court may, of course, consider a defendant's immigration status in determining whether a defendant might flee.  For defendants who face a virtual certainty of deportation following a substantial prison sentence, there is an obvious motivation to flee to their countries of origin rather than wait to serve a sentence in the United States and then be deported.  Such facts speak to the likelihood that a defendant will flee intentionally and to the conditions that might mitigate such a risk.").

    III.    <u>Analysis</u>

In the *Ibarra* case, which has similarities to the case at bar, the court found that the defendant was eligible for detention because the government had proved that he posed a serious risk of flight.  *Ibarra*, 2025 WL 27474, at \*3.  The *Ibarra* court went on to deny the government's detention motion on the ground that there were conditions of release that could reasonably assure the defendant's appearance.  *Id.* at \*4.  With all due respect, it appears to this court that there is an inevitable tension between a finding that a defendant poses a serious risk of flight and that there are, nonetheless, conditions that can reasonably assure his future appearances in court notwithstanding an ICE removal order or detainer that is likely to result in his immediate deportation on release.  The conditions of release on which the *Ibarra* court relied to conclude that pretrial detention was not warranted are unlikely ever to become operative.  For this reason and based on a review of the (sparse) evidence in this case and the decisions cited

5

herein, I conclude that the government has not shown a serious risk that Defendant will flee such that the government is entitled to have the court conduct a detention hearing. *See* 18 U.S.C. § 3142(f).

As to the issue of incentive to flee, this is not a case in which Defendant faces the risk of a substantial sentence followed by deportation. *See Lopez*, 2023 WL 8039318, at *4 n.3. The only offense with which Defendant is charged is illegal re-entry after deportation which carries a sentence of up to two years. *See* 18 U.S.C. § 1326(a). According to the Pretrial Services Report (PSR), Defendant's criminal history is very limited. With a minimal criminal history, his "sentencing guidelines range is [likely] only zero to six months … , which reduces the likelihood that he would be overcome by his motivation to flee." *Ibarra*, 2025 WL 27474, at *5; *see also Figueroa-Alvarez*, 681 F. Supp. 3d at 1141-42. At the detention hearing, the government argued that Defendant has an incentive to flee this district to another location within the U.S. While this is a fair point, "[n]o information available to the Court suggests [Defendant] has means to flee." *Mejias-Mejias*, 771 F. Supp. 3d at 693. "Other than the basic fact that [Defendant] is alleged to be a foreign national, and thus … has connections to his country of birth, no evidence or proffer demonstrates an ability to flee." *Id.* (citing *United States v. Pavon-Andino*, Criminal Case No. 25 mj-00022-TPO, 2025 WL 446143, at *3 (D. Col. Feb. 10, 2025) (finding the "ability to flee" consideration "neutral" in the context of analyzing serious risk of flight where, "[o]ther than his general ties to Honduras and the family members that live there, there is no evidence to support the defendant's specific ability to flee); *United States v. White*, No. 3:21-mj-04070, 2021 WL 2155441, at *14 (M.D. Tenn. May 27, 2021) ("The fact that Defendant lacks community ties specifically to this district may be probative of his risk of unintentional non-appearance in this district, but it is not very probative of whether he would intentionally not show up here and

instead choose the path of a fugitive.")). Defendant does not appear to have strong family or community ties in this jurisdiction, but there is confirmation that, most recently, he lived and worked in Pittsfield for some two years which is not a negligible span of time.

While Defendant's re-entries after deportation may be said to demonstrate a disregard of an official or court order, they "equally demonstrate his resolve to remain in … the United States." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1146.  On the question of Defendant's general trustworthiness, the government presented no evidence that Defendant has a history of substance use disorder or has used aliases to conceal his identity.  It further appears, from the affidavit filed in support of the complaint, that he has been forthcoming about his immigration status and identity when he has been stopped and questioned by federal authorities (Dkt. No. 3-1 at 2, ¶ 4, 3, ¶¶ 6,7, 4, ¶ 9, 5, ¶ 11).  *See Mejias-Mejias*, 771 F. Supp. 3d at 693; *Figueroa-Alvarez*, 681 F. Supp. 3d at 1145.  Finally, to the extent the record contains evidence as to whether Defendant is generally disposed to comply with court orders, so far as appears from his criminal history in the PSR, there are no defaults or probation violations (PSR at 2).  *See Mejias-Mejias*, 771 F. Supp. 3d at 693

The court's observation in the *Mejias-Mejias* case applies equally here.  "In the end, the common hallmarks of serious flight risks do not appear in this case." *Mejias-Mejias*, 771 F. Supp. 3d at 695.  Further, "the risk that Defendant will be deported and thus involuntarily be made absent from court does not constitute a serious risk of flight as that term is used in the BRA." *Lopez*, 2023 WL 8039318, at *4.  Thus, based on the evidence before it, the court concludes that the government may not seek detention in this case. *Mejias-Mejias*, 771 F. Supp. 3d at 695.  In accordance with the provisions of the BRA, the court will enter an order providing that Defendant is to be released on his personal recognizance, subject only to the conditions that

he not commit a new federal, state, or local crime while on pretrial release and that he cooperate in the collection of a DNA sample if required to do so by law. 18 U.S.C. §3142(b). A form of release is attached hereto as Exhibit 1.

    IV.    <u>Conclusion</u>

For the foregoing reasons, the government's motion for pretrial detention (Dkt. No. 6) is denied.

It is so ordered.

Date:  July 2, 2025                                        <u>Katherine A. Robertson</u>
                                                                 KATHERINE A. ROBERTSON
                                                                 U.S. MAGISTRATE JUDGE